# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ | x | |
| *In re* | : | Chapter 11 |
| | : | |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : | Case No. 08-12229 (MFW) |
| | : | |
| *Debtors* | : | (Jointly Administered) |
| _____ | : | |
| | : | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : | Adv. Proc. No. 09-50551 (MFW) |
| | : | |
| *Defendants for all claims*, | : | **Oral Argument Requested** |
| | : | |
| -and- | : | |
| | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | |
| | : | |
| *Additional Defendant for Interpleader Claim* | : | |
| _____ | x | |

(Caption continued on next page)

---

[1]    Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

————————————————————————— x

WASHINGTON MUTUAL, INC. AND : 
WMI INVESTMENT CORP., :
:
        *Plaintiffs*, :
:    Adv. Proc. No. 09-50934 (MFW)
      v. :
:    **Oral Argument Requested**
JPMORGAN CHASE BANK, NATIONAL :
ASSOCIATION, :
:
        *Defendant*. :

————————————————————————— x

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION FOR WITHDRAWAL OF THE REFERENCE OF THE <u>ADVERSARY PROCEEDINGS PURSUANT TO 28 U.S.C. § 157(d)</u>

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
**LANDIS RATH & COBB LLP**
919 Market Street Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
(Additional Counsel Listed on Signature Page)

*Counsel for JPMorgan Chase Bank,*
*National Association*

Dated: July 15, 2009

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT .......................................................................................... 5

I.      JPMC'S MOTION TO WITHDRAW THE REFERENCE IS TIMELY ......... 5

II.     THE RESOLUTION OF THE ADVERSARY PROCEEDINGS
        REQUIRES "SUBSTANTIAL AND MATERIAL"
        CONSIDERATION OF FEDERAL LAW REQUIRING
        MANDATORY WITHDRAWAL. ................................................. 8

        1.      The Resolution of WMI's Counterclaims Raises
                Substantial and Material Consideration of Federal
                Banking Statutes ...................................................... 10

        2.      The Resolution of WMI's Claims Regarding Ownership
                of WMB's Tax Refunds Raises Substantial and Material
                Consideration of Federal Banking Regulations ....................... 13

        3.      The Resolution of WMI's Intellectual Property Claims
                Raises Substantial and Material Consideration of
                Federal Banking Statutes .......................................... 15

        4.      The Resolution of WMI's Turnover Action Raises
                Substantial and Material Consideration of Federal
                Banking Statutes ...................................................... 17

III.    PERMISSIVE WITHDRAWAL IS ALSO APPROPRIATE ...................... 19

CONCLUSION .......................................................................... 211

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MDL 1529 (LMM),
   2006 U.S. Dist. LEXIS 8700 (S.D.N.Y. Feb. 9, 2006)............................................8

*In re Allegheny Health Educ. & Research Found.*,
   No. 06-1469, 2006 U.S. Dist. LEXIS 91548 (W.D. Pa. Dec. 19, 2006) ................7

*In re Am. Freight Sys., Inc.*,
   150 B.R. 790 (D. Kan. 1993)................................................................................15

*In re CIS Corp.*,
   172 B.R. 748 (S.D.N.Y. 1994) ......................................................................18–19

*In re CM Holdings, Inc.*,
   221 B.R. 715 (D. Del. 1998).................................................................................9

*In re Dana Corp.*,
   379 B.R. 449 (S.D.N.Y. 2007) .........................................................................8–9

*Educ. Credit Mgmt. Corp. v. Barnes*,
   259 B.R. 328 (S.D. Ind. 2001) .............................................................................13

*FDIC v. Shain, Schaffer & Rafanello*,
   944 F.2d 129 (3d Cir. 1991) ................................................................................10

*First Nationwide Bank v. Fla. Software Servs., Inc.*,
   770 F. Supp. 1537 (M.D. Fla. 1991)....................................................................15

*Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*,
   107 B.R. 34 (D. Del. 1989)............................................................................9, 13

*In re Homeland Stores Inc.*,
   204 B.R. 427 (D. Del. 1997)..................................................................................9

*Mass. Mut. Life Ins. Co. v. Marinari*,
   No. 07-5201 (FLW), 2008 U.S. Dist. LEXIS 37550 (D.N.J. May 6, 2008)..........20

*In re MCorp Fin. Inc.*,
   170 B.R. 899 (S.D. Tex. 1994) ....................................................................3–4, 14

*Meterlogic, Inc.* v. *Copier Solutions, Inc.*,
   185 F. Supp. 2d 1292 (S.D. Fla. 2002) ...................................................................20

*In re Mid Am. Entm't Plus, Inc.*,
   135 B.R. 419 (D. Kan. 1991) ..................................................................................9

*NAACP Special Contribution Fund* v. *Atkins*,
   908 F.2d 336 (8th Cir. 1990) ...............................................................................12

*In re N.Y. Trap Rock Corp.*,
   158 B.R. 574 (S.D.N.Y. 1993) ...............................................................................8

*In re Schlein*,
   188 B.R. 13 (E.D. Pa. 1995) ..................................................................................6

*Vill. of Oakwood* v. *State Bank & Trust Co.*,
   539 F.3d 373 (6th Cir. 2008) ...........................................................................10–11

*Vill. of Oakwood* v. *State Bank & Trust Co.*,
   519 F. Supp. 2d 730 (N.D. Ohio 2007) ................................................................11

*Washington Mutual Inc.* v. *FDIC*,
   No. 1:09-cv-00533 (RMC) (D.D.C.) ......................................................................2

*In re Worldcom, Inc.*,
   No. 06 Civ. 3407 (JGK)
   2006 U.S. Dist. LEXIS 52318 (S.D.N.Y. July 24, 2006) .......................................7

*Young* v. *Snider*,
   No. 94-0005, 1994 U.S. Dist. LEXIS 2901 (E.D. Pa. Mar. 11, 1994) ...............6–8

## STATUTES, RULES AND REGULATIONS

12 U.S.C. § 1464(s) ................................................................................................16

12 U.S.C. § 1464(t) ................................................................................................16

12 U.S.C. § 1821(d) ...............................................................................................10

12 U.S.C. § 1821(d)(2)(A)(i) ..................................................................................10

12 U.S.C. § 1821(d)(2)(G)(II) ........................................................................4, 15–16

12 U.S.C. § 1821(d)(3)(B)(i) ..................................................................................10

12 U.S.C. § 1821(d)(13)(D) ..............................................................................11–12

12 U.S.C. § 1828(u) ....................................................................................................11

28 U.S.C. § 157(d) .......................................................................................................1

Federal Reserve Act § 23A, 12 U.S.C. § 371c ......................................... 4, 10, 17, 19

Federal Reserve Act § 23B, 12 U.S.C. § 371c-1 .......................................4, 10, 17–19

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA") ...............................*passim*

26 C.F.R. § 1.1502-77(a) ...........................................................................................13

Interagency Policy Statement on Income Tax Allocation in a Holding
    Company Structure, 63 Fed. Reg. 64,757 (Nov. 23, 1998) ...................................13

Office of Thrift Supervision,
    Holding Companies Handbook (Dec. 2002) ...........................................................3

JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this memorandum of law in further support of its motion to withdraw the reference for the Adversary Proceedings.[2]

## PRELIMINARY STATEMENT

Mandatory withdrawal of the reference of the Adversary Proceedings is required and the Court should order withdrawal without hesitation. The Federal Deposit Insurance Corporation ("FDIC")—the government agency appointed receiver to ensure the efficient resolution of the failure of Washington Mutual Bank ("WMB")—has joined this motion because the "claims and counterclaims" asserted in the Adversary Proceedings "will require material and substantial consideration of federal law." (FDIC Resp. in Supp. of JPMC Mot. to Withdraw the Reference ("FDIC Br.") 1.) The FDIC is correct. The issues presented in these Adversary Proceedings require substantial and material consideration of the federal laws governing receiverships of failed banking institutions, as set forth in Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), as well as other federal banking laws. WMI's arguments in opposition in many respects misstate the record and, in all events, do not alter the conclusion that mandatory withdrawal of the reference is required.

---

[2]     JPMC has moved to withdraw Adversary Proceeding No. 09-50551 (MFW) brought by JPMC against Washington Mutual, Inc. and WMI Investment Corp. (collectively, "WMI" or "Debtors") (the "JPMC Adversary Proceeding") and Adversary Proceeding No. 09-50934 (MFW) brought by the Debtors against JPMC (the "Turnover Action") (collectively, the "Adversary Proceedings") from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to this Court's authority under 28 U.S.C. § 157(d).

*First*, WMI's assertion that this motion is untimely is unfounded. (WMI Opp'n to JPMC Mot. for Withdrawal of the Reference ("WMI Opp'n Br.") 12–14.) The motion was filed only a few weeks after WMI filed its Answer & Counterclaims in the JPMC Adversary Proceeding ("WMI Countercl.") raising substantial federal issues, and just a few days after WMI asserted for the first time that FIRREA does not apply at all to the Adversary Proceedings. Indeed, any appearance of delay in this case is solely WMI's responsibility. JPMC urged WMI to bring its counterclaims promptly. However, as late as May 1, 2009, WMI was still seeking more time from the Bankruptcy Court to consider "potential affirmative claims and counterclaims against JPMC . . . ." (C3, WMI Mot. for Order Enlarging Time 3.)[3] WMI's suggestion that JPMC was obliged to predict what WMI *might* eventually decide to plead or argue, and move to withdraw the reference in anticipation of what WMI might hypothetically do, is without any plausible legal basis.

*Second*, WMI's reliance on accusations of "forum shopping" (WMI Opp'n Br. 2, 13–14) has no place in this case. JPMC has consistently maintained that claims relating to the FDIC's receivership of WMB should be heard in the action WMI commenced against the FDIC in the U.S. District Court for the District of Columbia (the "D.C. District Court"). *Washington Mutual Inc.* v. *FDIC*, No. 1:09-cv-00533 (RMC) (D.D.C.) (the "D.C. Action"), in accordance with FIRREA. Therefore, when JPMC initiated the first Adversary Proceeding, it expressly sought declaratory judgment that claims relating to the receivership proceed in "the District Court Action [WMI] chose to commence." (*See, e.g.*, A196, JPMC

---

[3]    Parenthetical page references bearing the prefix "A__" are to the indicated pages of the Appendix filed with JPMC's Opening Brief on June 23, 2009. Parenthetical page references bearing the prefix "C__" are to the indicated pages of the Supplemental Appendix filed herewith.

Compl. ¶ 183.)   Likewise, each relevant "proof of claim" (which WMI mentions nearly a dozen times in its brief) states that the disputes at issue may be resolved in the D.C. Action (which WMI fails to mention).   More fundamentally, WMI's "forum shopping" assertion makes no sense where, as here, JPMC brought this motion *before* the Bankruptcy Court ruled on its pending motion to dismiss or decided whether to transfer this case to the District of Columbia or stay these proceedings.

   *Third*, WMI implies that there can be no substantial and material issues as to application of FIRREA because the Bankruptcy Court's ruling on June 24, 2009 "disposed" of all FIRREA arguments in this case.   (WMI Opp'n Br. 2.)   WMI fails to note that substantial issues remain as to the impact of the FDIC's disallowance of WMI's claims and its effect on these proceedings, as well as to FIRREA's impact on WMI's claims, including claims seeking to attack and rescind the very transaction by which WMB's assets were sold by the FDIC to JPMC.   For example, JPMC has a pending motion to dismiss WMI's counterclaims as barred by FIRREA's exclusive claims process and, even under the terms of the Bankruptcy Court's June 24 ruling, as barred by FIRREA's jurisdictional provisions. Moreover, both the FDIC and JPMC are seeking to appeal the June 24 ruling, which, JPMC respectfully suggests, is unsupportable and based upon a fundamentally incorrect view of FIRREA's breadth and mistaken application of Third Circuit law.

   *Fourth*, although the tax issues presented by the Adversary Proceedings are substantial and material, WMI's primary response is to denigrate pertinent legal authorities as less than binding as well as inapplicable in the context of a receivership.   (WMI Opp'n Br. 29.)   Not only is there no legal support for WMI's arguments, but the primary case on which WMI relies undercuts the position it asserts.   The court in *In re MCorp Financial Inc.*

determined that the purchaser of a failed bank's assets was estopped from re-asserting a tax claim it had relinquished and, in any event, there was no "express agreement" giving the purchaser a right to the disputed tax refunds. 170 B.R. 899, 902 (S.D. Tex. 1994). Here, by contrast, JPMC has preserved its tax claim and there is an express tax agreement applicable to the Washington Mutual entities that gives JPMC the right to tax refunds pursuant to the expressly incorporated federal tax and banking laws.

Fifth, with respect to WMI's trademark, patent and copyright infringement claims, because WMI's claims depend on its assertion that JPMC's licenses to all of the intellectual property assets were extinguished "[o]n September 25, 2008, upon the OTS's seizure of WMB" (A340, WMI Countercl. ¶ 197), WMI cannot avoid Section 1821(d)(2)(G)(II) of Title 12, which permits the transfer of WMB's ownership interests in the trademarks, patent and copyrights to JPMC, without WMI's approval. This federal statute is not, as WMI contends, "only tangentially relevant." (WMI Opp'n Br. 33.) Indeed, it is outcome determinative.

Sixth, with respect to WMI's Turnover Action to six accounts that purportedly contain $4 billion in alleged demand deposits (the "Disputed Accounts"), resolution of those claims will require substantial and material consideration of several provisions of federal banking law, including specifically Sections 23A and 23B of the Federal Reserve Act, and various provisions of FIRREA, including most notably its jurisdictional bar and comprehensive claims procedure. (Mem. in Supp. of JPMC's Mot. for Withdrawal of Reference ("JPMC Op. Br.") 17–19, 27–29.) Given this, WMI resorts to misleading the Court by asserting that prior to this motion JPMC has "***never once said a word about federal banking law***" in connection with the Disputed Accounts. (WMI Opp'n Br. 4 (emphasis in

original).) That is incorrect. In the JPMC Adversary Proceeding, JPMC sought declaratory judgment that disputes related to the Disputed Accounts be adjudicated in the D.C. Action, in accordance with FIRREA. (*See*, *e.g.*, A199, JPMC Compl. ¶ 204.) Likewise, JPMC moved to dismiss WMI's Turnover Action concerning the Disputed Accounts based on FIRREA's jurisdictional bar and to dismiss related counterclaims as barred by FIRREA's exclusive claims procedures. The use of bold and italics to replace substantive argument does not alter the fact that there are material and substantial issues of federal law presented.

In the event the Court does not order mandatory withdrawal, this Court should exercise its broad discretion to withdraw the Adversary Proceedings.[4]

## ARGUMENT

### I.     JPMC's Motion to Withdraw the Reference is Timely.

JPMC's motion to withdraw the reference was timely filed on June 23, 2009, twenty five days after WMI filed its counterclaims in the JPMC Adversary Proceeding, and eight days after WMI filed its oppositions to the FDIC's and JPMC's motions to stay or dismiss the respective Adversary Proceedings, both of which require "substantial and material" consideration of FIRREA and other federal laws. Before these filings, WMI had not taken any formal position on the application of Title 12 to the matters raised in the Adversary Proceedings. (*See*, *e.g.*, A149, JPMC Compl. ¶ 8.) WMI had not moved to dismiss or otherwise responded to JPMC's affirmative claims seeking to have the parties' disputes resolved in the D.C. Action. (*See*, *e.g.*, A196, JPMC Compl. ¶ 183.) WMI had not put forth differing interpretations of FIRREA or asserted that it could proceed with duplicate

---

[4]     If the reference is withdrawn, JPMC has requested that its motion to transfer the Adversary Proceedings to the U.S. District Court for the District of Columbia be heard.

claims before the Bankruptcy Court, which had already been disallowed by the FDIC and, in accordance with FIRREA, were on appeal in the D.C. Action. Indeed, it was not until June 15, 2009 that WMI expressly took the position that FIRREA's jurisdictional bar and its exclusive claims procedure "does not apply to the Turnover Action or the JPMC Adversary Proceeding." (C56, WMI Opp'n to Mots. to Stay 2.)

The timeliness of a motion to withdraw is measured from the "first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *See In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995) (granting a mandatory withdrawal motion filed after the Bankruptcy Court ruled on transfer and abstention motions). In other words, the issue of timeliness does not arise until "after the moving party has notice of the grounds for withdrawing the reference," *Young* v. *Snider*, No. 94-0005, 1994 U.S. Dist. LEXIS 2901, at *8 (E.D. Pa. Mar. 11, 1994) (citation and quotation omitted), namely, where the resolution of the proceedings requires substantial and material consideration of federal law. Given the facts of this case, JPMC's motion to withdraw was unquestionably timely.

WMI nonetheless argues that the timeliness of JPMC's motion to withdraw should be measured from March 24, 2009, when JPMC filed its Complaint. Although the motion to withdraw is timely even if measured from that date, WMI's argument is legally untenable. WMI argues the withdrawal motion could have been brought sooner because it "could hardly have been unexpected" that WMI would "counterclaim" in a manner that raised substantial and material issues of federal law. (WMI Opp'n Br. 3.) But, no court had ever permitted these sorts of counterclaims—a FIRREA claimant, whose claims have been disallowed by the FDIC and who is appealing that disallowance before another District

Court, to pursue a separate attack on that disallowance by proceeding with parallel claims against a subsequent purchaser of the same assets in a bankruptcy proceeding.  As a legal matter, there is no basis for WMI's contention that JPMC was required to move to withdraw the reference in March based on sheer speculation about what WMI might eventually decide to plead or argue.

Moreover, any purported delay (or purported prejudice from such delay) was created by WMI.  WMI itself took the position that its counterclaims could not be anticipated when, on May 1, 2009, WMI filed a motion with the Bankruptcy Court seeking an Order "Enlarging The Time For Asserting Counterclaims Against" JPMC.  In support of its motion, WMI represented that it "cannot at this time identify and review all facts relevant to potential affirmative claims and counterclaims against JPMC."  (C3, WMI Mot. for Order Enlarging Time 3.)  Stated differently, on May 1, 2009, WMI claimed not to know itself what counterclaims it intended to bring.

In any event, to the extent the Court decides to look at events before WMI filed its counterclaims on May 29, 2009, and even if the clock is turned back to March 24, the cases that WMI cites only find untimeliness after a lapse of much longer time periods. *See In re Worldcom, Inc.*, No. 06 Civ. 3407 (JGK), 2006 U.S. Dist. LEXIS 52318, at *8–9 (S.D.N.Y. July 24, 2006) (eighteen months elapsed before the motion to withdraw the reference was untimely); *In re Allegheny Health Educ. & Research Found.*, No. 06-1469, 2006 U.S. Dist. LEXIS 91548, at *5–6 (W.D. Pa. Dec. 19, 2006) (holding a more than ten-month delay was untimely where the movant "offered no explanation for its delay"); *Young* v. *Snider*, 1994 U.S. Dist. LEXIS 2901, at *9–10 (E.D. Pa. Mar. 11, 1994) (motion to withdraw untimely where "matter has already been the subject of a preliminary injunction

hearing, the parties have conducted discovery, and the bankruptcy court has already held a hearing on class certification").[5]

Likewise, WMI's characterization of the motion to withdraw the reference as "forum shopping" is misplaced in this case. (WMI Opp'n Br. 2, 13–14.)  As is clear from JPMC's Complaint in the JPMC Adversary Proceeding and its proofs of claim, JPMC has consistently taken the position that WMI's claims should be heard in the D.C. Action. (*See*, *e.g.*, A196, JPMC Compl. ¶ 183.)  In addition, JPMC brought this motion *before* it knew whether the Bankruptcy Court would rule in its favor on its pending motion to dismiss and before it knew whether the Bankruptcy Court would transfer this case to the District of Columbia or stay these proceedings.  There is no forum shopping here.

## II.     THE RESOLUTION OF THE ADVERSARY PROCEEDINGS REQUIRES "SUBSTANTIAL AND MATERIAL" CONSIDERATION OF FEDERAL LAW REQUIRING MANDATORY WITHDRAWAL.

WMI's overarching argument that mandatory withdrawal of the reference is not available because these are "core bankruptcy proceedings" and "involve issues with which the Bankruptcy Court is intimately familiar" misstates the relevant standard.  (WMI Opp'n Br. 2, 16.)  "Mandatory withdrawal does not depend on whether the statutory interpretation falls within the bankruptcy court's 'core' or 'non-core' jurisdiction."  *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2006 U.S. Dist. LEXIS 8700, at *11 (S.D.N.Y. Feb. 9, 2006) (citations omitted); *see also In re Dana*

---

[5]     WMI relies on one decision where a three-month delay was held untimely, which is inapplicable for several reasons.  In *In re New York Trap Rock Corp.*, the court held that a withdrawal motion was untimely because, among other reasons, a trial date had already been set and the motion to withdraw was filed shortly after the bankruptcy court made findings of fact against the movant.  158 B.R. 574, 577 (S.D.N.Y. 1993).  Here, no discovery has taken place, no

*Corp.*, 379 B.R. 449, 463 (S.D.N.Y. 2007) (holding that the "matter at issue is core," but "mandatory withdrawal [wa]s warranted"); *Hatzel & Buehler, Inc.* v. *Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989) (determining core/non-core nature of proceeding only in connection with permissive withdrawal, after separately determining withdrawal was required as mandatory).   Likewise, we are aware of no case holding that mandatory withdrawal is inappropriate because the bankruptcy court is "intimately familiar" with the federal issues that must be considered.  (WMI Opp'n Br. 16.)

Mandatory withdrawal of the reference is required if, in addition to the existence of any Title 11 issues, the adjudication of the claims in the Adversary Proceedings requires substantial and material consideration of federal law.  *See, e.g., In re CM Holdings, Inc.*, 221 B.R. 715, 722–24 (D. Del. 1998) (granting mandatory withdrawal after "consider[ing] each potential tax issue"); *In re Homeland Stores Inc.*, 204 B.R. 427, 30–32 (D. Del. 1997) (granting mandatory withdrawal after "merely pinpointing potential [federal law] issues").   Accordingly, even where the claims in an adversary proceeding arise solely under bankruptcy law, mandatory withdrawal is required where other federal statutes require substantial and material consideration in adjudication of those claims.  *See, e.g., In re Homeland Stores Inc.*, 204 B.R. at 430–32; *In re Mid Am. Entm't Plus, Inc.*, 135 B.R. 419, 22–23 (D. Kan. 1991).

Here, mandatory withdrawal of the reference is appropriate because the merits of WMI's claims cannot be reached without addressing the various federal banking law statutes, including FIRREA's claims process and jurisdictional bar, federal tax law,

---

trial has been scheduled, and the motion to withdraw the reference was brought *before* the Court made rulings on any of the federal disputes that gave rise to this motion.

FIRREA's limitations on avoiding intellectual property licenses and Sections 23A and 23B of the Federal Reserve Act.  (JPMC Op. Br. 17–32.)

### 1.     The Resolution of WMI's Counterclaims Raises Substantial and Material Consideration of Federal Banking Statutes.

Despite WMI's arguments to the contrary, the Adversary Proceedings raise substantial and material issues with respect to the application of FIRREA's claims process and jurisdictional bar.  To the extent that WMI is seeking recovery of assets seized and sold by the FDIC, its claims are a clear attempt to circumvent FIRREA.  (JPMC Op. Br. 19–22.) Any rights that would be asserted by WMI would be either as a former stockholder, depositor or creditor of WMB and must be asserted as part of the FIRREA claims process.  *See* 12 U.S.C. § 1821(d).[6]  Indeed, the Third Circuit has confirmed that FIRREA's comprehensive claims process is the "exclusive" process for resolving such claims.  *See FDIC* v. *Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3d Cir. 1991).

WMI superficially responds that it is not bound by FIRREA's exclusive claims process because its claims are against JPMC as a "subsequent transferee," and not against the FDIC, and therefore it should be permitted to break out of the exclusive FIRREA claims process.  (WMI Opp'n Br. 20–21.)  This argument makes no sense and has been expressly rejected by the only court to squarely consider this issue.  *See Vill. of Oakwood* v.

---

[6]     The FDIC as receiver succeeds to "all rights, titles, powers, and privileges of the insured depository institution," including "all rights, titles, powers, and privileges" of any "stockholder" or any "depositor" of such institution "with respect to the institution and the assets of the institution."  12 U.S.C. § 1821(d)(2)(A)(i).  Therefore, if WMI is seeking compensation as the former "stockholder" or "depositor" of WMB, their "rights, titles, powers, and privileges" as such now reside with the FDIC and, thus, it must seek any relief from the FDIC pursuant to the FIRREA claims process.  Likewise, to the extent that WMI is seeking relief as a creditor of WMB, it must "present [its] claims, together with proof, to the receiver."  12 U.S.C. § 1821(d)(3)(B)(i).

*State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that permitting such an end-run "would encourage the very litigation that FIRREA aimed to avoid"); *see also Vill. of Oakwood* v. *State Bank & Trust Co.*, 519 F. Supp. 2d 730, 738 (N.D. Ohio 2007) (same).  At the moment the receivership was instituted, all of WMI's claims arising from the receivership and the seizure of WMB's assets had to be asserted in accordance with the FIRREA claims process.  The FDIC's later actions (such as the sale of the receiver's assets to JPMC) cannot be the genesis of new claims outside the boundaries of the FIRREA claims process because, if so, the exclusivity of the FIRREA claims process would have little meaning.  WMI's arguments against this obvious proposition create substantial and material issues of federal law that require consideration.[7]

      With respect to FIRREA's jurisdictional bar, JPMC's Opening Brief asserted that all of WMI's claims are barred by FIRREA, which provides the exclusive process for handling claims involving failed bank assets and appeal of disallowance of any claim asserted against the receiver, such as those at issue here.  12 U.S.C. § 1821(d)(13)(D)(i), (D)(ii).  (JPMC Op. Br. 29–34.)  WMI overstates the Bankruptcy Court's June 24 ruling as "already dispos[ing]" of all arguments relating to FIRREA's jurisdictional bar, which does "not apply to the adversary proceedings."  (WMI Opp'n Br. 2; *see also id.* at 34.)  At the

---

[7]    WMI's counterclaims also require substantial and material consideration of federal law in light of the statutory requirement of Section 1828(u) of Title 12, which prohibits "claim[s] against any Federal banking agency (including in its capacity as conservator or receiver) for the return of assets of an affiliate or controlling shareholder of the insured depository institution" if at the time of transfer "the insured depository institution is subject to any direction issued in writing by a Federal banking agency to increase its capital."  12 U.S.C. § 1828(u).  Issues of fact exist as to the accuracy of WMI's assertion that WMB was not "operating under such direction" from the banking regulators.  (WMI Opp'n Br. 22.)  Issues of law exist as to the application of this statute when the claim is nominally brought against a third-party purchaser.

June 24 hearing, the Court ruled that: "to the extent . . . [that] the debtor is asserting a claim against JPMC to *assets* that the debtor claims are property of the estate . . . FIRREA does not bar it." (C181, Tr. of June 24, 2009 Hearing 94:14–18 (emphasis added).) JPMC's pending motion to dismiss demonstrates that, even accepting that ruling, it does not reach Debtors' Tenth Counterclaim, seeking avoidance of the "P&A Transaction" between the FDIC and JPMC (A334 – A335, WMI Countercl. ¶¶ 153–61) or WMI's other claims for assets that are not the property of the estate. (A325 – A337, *id.* ¶¶ 93–132, 139–52, 162–66, 175–77.)

Moreover, the Adversary Proceedings will continue to present substantial and material issues with respect to the reach of FIRREA's jurisdictional bar.[8] JPMC and the FDIC each filed a notice of appeal, challenging the Bankruptcy Court's interpretation of the jurisdictional bar imposed by Section 1821(d)(13)(D)(ii) of Title 12. (C256 – C287, FDIC Br. in Supp. of Mot. for Leave to Appeal; C288 – C330, JPMC Stat. in Supp. of Appeal.) Although WMI states that "[t]he applicable law in the Third Circuit on this issue is clear and unequivocal" (WMI Opp'n Br. 2), that is not true. As explained by the FDIC, WMI's "attempt to collaterally attack the FDIC-Receiver's disallowance of WMI's receivership claims through Bankruptcy Court litigation against the assuming bank under a purchase and assumption agreement *is without precedent*." (FDIC Br. 6 (emphasis added).) There is no other case where parties who have brought claims as part of the FIRREA claims process, whose claims have been disallowed by the FDIC, and who are appealing that disallowance

---

[8]    WMI claims that JPMC's reliance on FIRREA's jurisdictional bar is precluded by the "the law of the case doctrine" and as a "collateral attack" against the Bankruptcy Court's June 24 ruling. (WMI Opp'n Br. 35–36.) WMI's reliance on these doctrines is unavailing because substantial and material FIRREA issues remain to be resolved. Moreover, it is for the Court, not WMI, to determine the law of the case and its impact on JPMC's pending motion. *Cf. NAACP Special Contribution Fund* v. *Atkins*, 908 F.2d 336, 340 (8th Cir. 1990).

before another District Court, have been permitted (as the Bankruptcy Court allowed here) to pursue a separate attack on that disallowance by proceeding with parallel claims against the subsequent purchaser of the same assets.

    2.    **The Resolution of WMI's Claims Regarding Ownership of WMB's Tax Refunds Raises Substantial and Material Consideration of Federal Banking Regulations.**

WMI's claims in the JPMC Adversary Proceeding would effectively vitiate federal banking regulations that require WMI to promptly turn over to JPMC any tax refunds arising from WMB's activities. (JPMC Op. Br. 23–26; *see also* Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 64,757, 64,759 (Nov. 23, 1998) (citing 26 C.F.R. § 1.1502-77(a)). These regulations prohibit the relief WMI seeks, which would place the regulated entity (WMB) in a worse position than if it had filed a separate tax return. *See*, *e.g.*, 63 Fed. Reg. at 64758; Office of Thrift Supervision, Holding Companies Handbook § 500, at 500.8 (Dec. 2002). As summarized by the FDIC, mandatory withdrawal of the reference is appropriate, in part, because WMI's "claims to tax-related assets directly implicate federal law applicable to consolidated tax groups involving bank holding companies." (FDIC Br. 9.) WMI's four opposition arguments do not defuse this conclusion.

    *First*, WMI attempts to denigrate these authorities as faux "laws," suggesting that they need not be considered on a motion to withdraw, are unfounded. (WMI Opp'n Br. 29.) Regulations promulgated pursuant to statutory authority are grounds for mandatory withdrawal. *See Educ. Credit Mgmt. Corp.* v. *Barnes*, 259 B.R. 328, 329 (S.D. Ind. 2001) (mandatory withdrawal of adversary proceeding based on movant's claim that Department of Education regulation was unconstitutional); *Hatzel & Buehler, Inc.* v. *Orange & Rockland*

*Utils., Inc.*, 107 B.R. 34, 38–39 (D. Del. 1989) (granting mandatory withdrawal in light of need for substantial consideration of "OSHA and EPA regulations").

  *Second*, WMI claims that these regulations "contemplate a going concern," but are "inapplicable" in the receivership and bankruptcy context. (WMI Opp'n Br. 29–30.) Put a different way, WMI claims that that although billions in tax refunds may have belonged to WMB in the days before the receivership and bankruptcy, those tax refunds now belong to WMI. Anyhow, by failing to cite to any authority to support its argument, WMI implicitly concedes that, if its argument is to be considered, it will require consideration of not only a substantial and material issue of federal law, but also a novel issue as well—when, if ever, are the federal banking and tax laws "trump[ed by] bankruptcy's fundamental principle of equal treatment of creditors." (*Id.*)

  *Third*, WMI relies heavily on *In re MCorp Financial Inc.*, which considered whether tax refunds paid by the IRS to a failed bank should be paid over to an acquiring bank. 170 B.R. 899 (S.D. Tex. 1994). WMI contends that this is a "directly on-point decision" because it "contains no cites to the FDI Act" and thus establishes that the Bankruptcy Court "will not be faced with 'meaningful consideration' of the federal banking laws." (WMI Opp'n Br. 28–29.) The fact that the acquiring bank in *MCorp Financial* did not invoke these regulations sheds no light on the tax issues in this case. The acquiring bank in that case was held to be "estopped" from seeking the refunds because it had failed to preserve its claim. *Id.* at 901. In addition, the *MCorp Financial* court stressed that "[a]bsent *an express agreement*, the existence of a consolidated return does not imply an unequivocal right to the refund in the taxpayer." *Id.* at 902 (emphasis added). Here, JPMC has preserved its claim to the tax refunds and the tax agreement at issue expressly incorporated federal tax,

bank and thrift regulatory guidelines by reference. (*See* A168, JPMC Compl. ¶¶ 91–92 (citing WMI/WMB Tax Sharing Agreement § 5).) Application of those federal laws are substantial and material to the Adversary Proceedings.

 *Fourth*, WMI contends that, if these federal regulations govern the parties' rights in the receivership context, this would merely require that the "assets be held in trust for the benefit of WMB or" JPMC, and could be distributed by the Bankruptcy Court. (WMI Opp'n Br. 30.) If WMI now admits that WMB's tax refunds belong to JPMC, WMI's claim to these tax funds can be dismissed with prejudice and the tax refunds may be released to JPMC. This path would avoid substantial and material consideration of applicable federal law. Until then, WMI's claims necessarily require consideration of these federal regulations and, thus, require mandatory withdrawal.

 **3.** **The Resolution of WMI's Intellectual Property Claims Raises Substantial and Material Consideration of Federal Banking Statutes.**

 The resolution of WMI's trademark, patent and copyright infringement claims (Counterclaims 15–18) also require substantial and material consideration of federal law. WMI does not dispute that WMB possessed licenses to all of the intellectual property assets at issue at the time of the receivership. Pursuant to Section 1821(d)(2)(G)(II) of Title 12, the FDIC as receiver was authorized to, and in fact did, transfer—prior to the commencement of WMI's bankruptcy case—WMB's ownership interests in the trademarks, patent and copyrights to JPMC, without WMI's "approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(II); *see also First Nationwide Bank* v. *Fla. Software Servs., Inc.*, 770 F. Supp. 1537 (M.D. Fla. 1991) (holding that Section 1821(d)(2)(G)(II) authorized the receiver to assign a software license to the acquiring bank post-receivership,

notwithstanding an anti-assignment clause in the license agreements). Nonetheless, WMI asserts that WMB's rights were extinguished "[o]n September 25, 2008," when the FDIC was appointed receiver. (A340, WMI Countercl. ¶ 197; *see also* A338, *id.* ¶ 183.)

WMI argues that its position does not raise substantial and material issues of federal law because the application of Section 1821(d)(2)(G)(II) is "only tangentially relevant." (WMI Opp'n Br. 33.) This assertion is false. Determination of WMI's claim that "upon the OTS's seizure of WMB, WMB's implied license[s] . . . [were] terminated" (A340, WMI Countercl. ¶ 197) requires analysis of a threshold federal issue: to what extent can a Bankruptcy Code debtor evade application of the provisions of Section 1821(d)(2)(G)(II) of Title 12 to licenses that were transferred by the FDIC as received prior to the commencement of the case, where the transfer of WMB's ownership interests in the trademarks, patent and copyrights to JPMC was authorized by federal law without WMI's approval. This is not simply a matter of deciding what is part of the Debtor's estate. (WMI Opp'n Br. 33.) Whether, and the extent to which, the licenses were the property of the Debtors' estate necessarily requires interpretation and application of this provision of Title 12 of the U.S. Code. It is for this reason that mandatory withdrawal of the reference is required.[9]

---

[9]     WMI devotes close to three pages (WMI Opp'n Br. 31–33) to respond to three sentences in JPMC's Opening Brief, in which JPMC explained that the adjudication of WMI's claims over ownership of trust preferred securities will require consideration of the effect of the OTS's capital adequacy regulations and the statutory standards imposed pursuant to 12 U.S.C. § 1464(s), (t). WMI contends that these statutes "will not significantly impact the Bankruptcy Court's resolution of the Debtors' Counterclaims" (WMI Opp'n Br. 32), but, on the contrary, these provisions make clear that "the Director may treat the failure of any savings association to maintain capital at or above the minimum level required by the Director under this subsection or subsection (t) as an unsafe or unsound practice." 12 U.S.C. § 1464(s)(3).

**4.    The Resolution of WMI's Turnover Action Raises Substantial and Material Consideration of Federal Banking Statutes.**

WMI's Turnover Action requires substantial and material consideration of several aspects of federal banking statutes, including specifically Sections 23A and 23B of the Federal Reserve Act. (JPMC Op. Br. 17–18, 27–29.)  Unable to contest this conclusion, WMI attempts to misdirect the Court away from the substance of this argument.

*First*, WMI misleadingly asserts that JPMC has "***never once said a word about federal banking law***" in connection with the Disputed Accounts. (WMI Opp'n Br. 4 (emphasis in original).)  To the contrary, JPMC has sought declaratory judgment that disputes related to the Disputed Accounts be adjudicated in the D.C. Action, in accordance with Title 12 of the U.S. Code. (*See*, *e.g.*, A199, JPMC Compl. ¶ 204.)  In addition, JPMC moved to dismiss WMI's Turnover Action, specifically stating that the jurisdictional provisions of FIRREA, which govern the resolution of failed banks, applied to WMI's claims to the Disputed Accounts. (C24, JPMC Br. in Supp. of Mot. to Dismiss Turnover Action 11 n.3; C46 – C47, JPMC Reply Br. in Supp. of Mot. to Dismiss Turnover Action 10–11.)  JPMC has also argued that the exclusive FIRREA claims procedure and other federal banking laws bar WMI's counterclaims relating to the same Disputed Accounts. (*See* A366 – A368, JPMC Mot. to Dismiss WMI Countercl. 15–17.)

*Second*, WMI argues that there could be no legitimate issue under Sections 23A and 23B of the Federal Reserve Act because JPMC has already "raised every issue to the Bankruptcy Court—both factual and legal—that it could muster," and has yet to raise these points. (WMI Opp'n Br. 17; *see also id.* at 3–4, 24.)  WMI, however, has made a (pre-discovery) motion for summary judgment. JPMC has not yet responded to that motion. To

suggest that JPMC has presented "every factual and legal" issue at this nascent stage of the Adversary Proceedings—before discovery and before JPMC has responded to a pending motion—simply misstates the record.

  *Third*, WMI also fundamentally mischaracterizes the nature of the issues relating to the Disputed Accounts by arguing that even if "an intercompany loan made from [WMB's subsidiary, Washington Mutual Bank fsb ("WMBfsb")] to WMB . . . was in violation of the statute [it] is irrelevant to the Debtors' Turnover Action . . . because the Deposits held at *both banks* were assumed by JPMC . . . ." (WMI Opp'n Br. 24–25 (emphasis in original).)  WMI presupposes that it has an "unquestionable right" to payment for liabilities arising from a set of deposit accounts that were properly funded and that were properly credited with good funds (WMI Opp'n Br. 8), but there are significant disputes about whether the Disputed Accounts are deposit accounts, the amount of the purported funds in the accounts, whether the funds belong to WMI or others, the effect of an attempted roundtrip transaction involving $3.7 billion days before the receivership, and JPMC's right to setoff, recoupment and offset with respect to any funds.  (C229, JPMC's Answer and Counterclaim/Cross-Claim in the Turnover Action ("JPMC Countercl.") ¶ 33; C232, *id*. ¶ 44; C244 – C245, *id*. ¶ 89–91.)  Resolution of these disputes will require substantial and material consideration of federal banking statutes stating that a member bank and affiliate must only engage in a transaction on terms and under circumstances that are substantially the same "as those prevailing at the time for comparable transactions with or involving other nonaffiliated companies."  12 U.S.C. § 371c-1(a)(1)(A).

  *Fourth*, WMI cites to *In re CIS Corp.*, 172 B.R. 748 (S.D.N.Y. 1994), in support of its opposition to the motion to withdraw.  The *CIS* court declined to withdraw the

reference because the conflict between Title 11 and the relevant federal statutes and regulations was only "cryptically" identified. *Id.* at 754. Here, WMI's conduct with respect to the Disputed Accounts implicates a very specific federal law, as was aptly summarized by the FDIC: "WMI's purported transfer of $3.7 billion in alleged deposit funds from WMB to WMBfsb and purportedly simultaneous loan back from WMBfsb to WMB on the eve of WMB's receivership raises serious issues under Sections 23A and 23B of the Federal Reserve Act, which requires transactions between affiliates in a bank holding company structure to be on terms as favorable to a bank as those prevailing for comparable transactions among unaffiliated entities." (FDIC Br. 9.) Although WMI is taking the position that Sections 23A and 23B could be interpreted as inapplicable to the Disputed Accounts (WMI Opp'n Br. 24), clearly such arguments raise substantial issues of federal law to be resolved.

## III.     PERMISSIVE WITHDRAWAL IS ALSO APPROPRIATE.

In the event that the Court does not order mandatory withdrawal, this Court should exercise its broad discretion to withdraw the Adversary Proceedings and transfer the Adversary Proceedings to the D.C. District Court. These same assets are at issue in the D.C. Action, which WMI filed prior to the commencement of the Adversary Proceedings. Granting permissive withdrawal and a subsequent motion to transfer is the *only* manner in which the intertwined issues in the Adversary Proceedings and the D.C. Action can be adjudicated uniformly and comprehensively without the risk of conflicting determinations.

WMI asserts that "any incidental efficiency achieved by withdrawal of the reference and transfer to Washington D.C. would be outweighed by the significant efficiencies that can be maintained by maintaining these proceedings in the Bankruptcy

Court." (WMI Opp'n Br. 41.)[10]  A recent case in the Third Circuit rejected a similar argument that it would be "efficien[t]" to subject the parties to a bankruptcy proceeding while litigating related claims in district court. *Mass. Mutual Life Ins. Co.* v. *Marinari*, No. 07-5201 (FLW), 2008 U.S. Dist. LEXIS 37550 (D.N.J. May 6, 2008).  The *Massachusetts Mutual* court noted that permissive withdrawal would reduce the confusion of potentially having two inconsistent rulings from two courts. *Id.* at *8–10.  The court rejected the argument that "it is the Bankruptcy Court's role to hear this type of dispute" because, although "the Bankruptcy Court's role is to adjudicate claims that are core in nature, original jurisdiction vested in the district court, which is also capable of adjudicating bankruptcy matters." *Id.*  The same logic applies here, especially given that the D.C. District Court is the only court that can hear all claims asserted by WMI against the FDIC and JPMC—because even WMI concedes that, under FIRREA, it can only sue the FDIC in the District of Columbia.

---

[10]    WMI also argues that because the Bankruptcy Court's June 24, 2009 Order denied JPMC's request to transfer the Adversary Proceedings, "JPMC is now barred from seeking transfer . . . by the doctrine of issue preclusion." (WMI Opp'n Br. 36–37.)  Issue preclusion is not implicated here because a court can always revisit a prior denial of a motion to transfer in its discretion, especially in light of a change in circumstances, *see*, *e.g.*, *Meterlogic, Inc.* v. *Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1298 (S.D. Fla. 2002), such as the fact that on July 13, 2009, JPMC was named a defendant in the D.C. Action, thus removing one factor that weighed against transfer.

## CONCLUSION

For the foregoing reasons and the reasons set forth in JPMC's Opening Brief, JPMC respectfully requests that this Court grant JPMC's Motion to Withdraw the Reference of the Adversary Proceedings from the United States Bankruptcy Court for the District of Delaware.

Dated:  July 15, 2009
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street Suite 1800
Wilmington, Delaware 19801
Telephone:   (302) 467-4400
Facsimile:   (302) 467-4450

– and –

Robert A. Sacks
Hydee R. Feldstein
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California  90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Bruce E. Clark
Stacey R. Friedman
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588

*Counsel for JPMorgan Chase Bank,*
*National Association*